25 C.C.P.A. (Patents)
### WYLAND v. SIMONS.
### Patent Appeal No. 3832.

Court of Customs and Patent Appeals.
Dec. 23, 1937.

George J. Schottler, of New York City, for appellant.

Ward, Crosby & Neal, of New York City (Carl T. Mack, of Washington, D. C., and S. Mortimer Ward, S. Mortimer Ward, Jr., and Raymond J. McElhannon, all of New York City, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an interference proceeding involving a single count copied by the party Wyland into his application from the party M. Simons' patent No. 1,952,388. Wyland filed his application on October 29, 1927. Simons was restricted by his preliminary statement for his date of conception of the issue to a date subsequent to Wyland's filing date. After the institution of the interference, the Examiner of Interferences of the United States Patent Office ordered Simons to show cause why judgment on the record should not be entered against him. Thereupon, Simons filed a motion to dissolve the interference on two grounds: First, that the party Wyland had no right to make the count because his disclosure did not include the method of the count; second, that the count was not patentable over a patent to Baxter, No. 134,968, issued January 21, 1873, if interpreted so as to read on the Wyland disclosure. The motion was denied by the Primary Examiner, who held that the count was fully supported by the Wyland disclosure, and that Simons was "precluded to suggest the unpatentability to his own patented claim," and that in any event he regarded the claim as patentable over any references considered. The Examiner of Interferences then awarded priority of the invention to Wyland.

Simons appealed to the Board of Appeals which reversed the decision of the Examiner of Interferences.

Wyland has here appealed for a review of the decision of the Board.

The sole question in determining priority of the count involved depends upon the answer to the ancillary question as to whether or not the count is supported by the Wyland disclosure.

The invention involved relates to the art of making wire-drawing dies and especially to the method of mounting a quantity of very hard wear-resisting material in the center of the die, which hard material must be perforated and is used for cutting or abrading the wire as it is drawn through the die. Many different substances have been used for this purpose; the most common being an uncut diamond. Wyland in his application is particularly interested in using a diamond for the wearing or cutting element of the die, while the party Simons speaks of the cutting element as a nib which "may consist mainly of tungsten carbide or equivalent material."

The count of the interference, as it appears in the said patent to Simons, 1,-952,388, is as follows: "1. The method of forming a drawing die, including the steps of preassembling a nib-forming block in a hollow metal casing, simultaneously heating the casing and block and while they are hot applying substantial compression force to said casing in a wire drawing direction while limiting the outward flow of the metal of the casing in a direction at right angles to the wire drawing direction, whereby the circumferential contraction of the inner wall of the casing places the nib under compression."

It was the position of Simons before the Patent Office tribunals, and it is his position here, that Wyland's disclosure does not meet the following requirements of the count:

(1) A "nib-forming block."

(2) The step of "pre-assembling a nib-forming block in a hollow metal casing."

(3) The step of "limiting the outward flow of the metal of the casing in a direction at right angles to the wire drawing direction."

(4) The step of placing the nib under compression by "circumferential contraction of the inner wall of the casing."

Neither of the tribunals below described in detail the structural elements comprising the disclosures of the two parties. We think the precise issue can be best understood by briefly describing the respective structures of the parties.

Simons, in the drawings and specification of the patent from which the count is derived, shows a holder block which is of extremely hard material having a socket therein slightly tapered from its mouth to its bottom and which is adapted to receive the nib and its immediate casing. A circular die plate rests upon the bottom of the socket. There is a hole through the circular die plate, the purpose

of which is to permit the die and its casing to be forced out after the forging operation. The die casing, including the nib-forming material, is placed in the socket. Into the top of the casing is inserted a plunger of a percussion press. It is this plunger which comes in contact with the nib casing and the nib during the operation that brings about the shaping of the die. The patentee states: "* * * The force of the plunger transmitted endwise of the casing causes transverse flow of the material of the casing wall, thickening the latter and causing it to exert a very high pressure on the block of tungsten-carbide. As an incident of this forging operation, part of the material of the bevelled upper end of the casing is forced inwardly over the top of the block. * *"

The party Wyland has a structure that is quite different in most respects. It is his purpose to force metal around an irregularly shaped uncut diamond, and for this purpose he provides what he calls an investment plug for forming part of the encasement around the diamond. The investment plug of Wyland is inserted in a shell for forming part of the encasement. At the bottom of the opening in the shell is a circular groove extending outwardly from the perpendicular sides of the shell. In the bottom of the opening of the shell is an annular seat with a downwardly tapered vertex on which annular seat is placed the diamond. Around the casing and shell is placed a suitable retaining ring which holds the plug, shell, and diamond in position for the operation. When a plunger or plug is "rammed into the pocket upon and about the diamond" while the whole assembly is under high temperature, the melted metal which forms the first part of the casing described flows and is pressed in and around the diamond and also into the vertex of the annular seat at the bottom of the shell opening heretofore described.

The Board said:

"The question before us for consideration is whether the count is supported by the Wyland disclosure. The subject matter relates to a method of forming a wire drawing die and in the Simons application, where the count originated, the material of the nib is a block of cylindrical form. In the Wyland application it is a rough diamond of irregular shape. The surrounding casing which causes the flow of the metal against the block in Simons is at right angles to the line of pressure while in Wyland a portion is at right angles and another portion at a different angle.

"It is not deemed necessary to repeat in full appellant's reasons for contending that the count is not properly supported by the Wyland disclosure as these are fully set forth in the Simons brief.

"We believe that the patent to Simons, No. 1,420,224, has a most important bearing on the situation and we shall now consider it. This patent was cited during the prosecution of the Simons application and in accordance with the rules, it should be considered in determining the meaning of the count. There is no question but that there is a substantial difference between the structures of the party Simons and the party Wyland and we are satisfied that the structure and disclosure of the Simons patent is more closely related to that of the party Wyland than it is to that of the party Simons.

"If the count can be construed as broad enough to read upon the party Wyland's structure, we are convinced that it reads as well on that of the Simons patent. We believe it is clear, therefore, that the count is unpatentable to the party Wyland and we do not consider that he should be awarded priority with this count as the issue."

As is noted in the above-quoted language of the Board, it was its view that if the count at bar was construed so broadly as to read upon the party Wyland's structure, it would read on the patent to A. Simons, No. 1,420,224. The Board called attention to the fact that this patent was cited during the prosecution of the M. Simons' application and the Board regarded it as proper for a consideration of this matter in determining the meaning of the count. The Board concluded that if the construction contended for by Wyland was given to the count it would be unpatentable to the party Wyland.

Wyland here urges that Simons was not entitled to question the patentability of the count and supported the Examiner of Interferences in saying: "The party Simons is precluded to suggest the unpatentability of his own patented claim even though he qualifies such statement that this is so only when the claim is given a broad interpretation as to the two expressions discussed above and as contended for by Wyland."

Wyland also urges that his disclosure shows a nib-forming block. The party Simons referred to the nib-forming block as being the cylindrical shaped body of tungsten carbide which is flattened at both ends. Wyland must necessarily regard his nib-forming block or the block from which the nib is made as the uncut diamond which is shown in the disclosure as rounded or egg-shaped.

It must be remembered at this point that the patent to A. Simons, which was prior art to both parties, showed an uncut diamond like that of Wyland. It seems to us that in determining the meaning of the term "nib-forming block," it is proper to consult the patent from which the count arose. We do not think that the term in the M. Simons patent can be given a meaning which is broad enough to embrace the diamond disclosure in the Wyland application. The Board has held that to construe the count as broadly as Wyland contends for would be a departure from the construction that was given when the claim was allowed over the prior art. We, upon consideration of the same question, are not convinced that the Board, in this respect, was in error. See In re Nicolson, 49 F.2d 961, 18 C.C.P.A., Patents, 1468; McIntyre v. Dodge, 58 App.D.C. 273, 29 F.2d 861; Underwood's Interference Practice (1928), page 38; Bernard v. White, 88 F.2d 741, 24 C.C.P.A. Patents 1054.

Moreover, we are not impressed with the contention of Wyland that his structure responds to the clause "while limiting the outward flow of the metal of the casing in a direction at right angles to the wire drawing direction, whereby the circumferential contraction of the inner wall of the casing places the nib under compression." It is clear that the flowing of the metal of the casing in the party Simons' disclosure is confined to an inward flow which is at right angles to the wire drawing direction. In both disclosures the wire drawing direction is from the top to the bottom of the structure. It seems clear that when the cylindrical plug of Wyland, which is, in some respects, comparable to the nib-forming casing of Simons, melts at certain places, the molten metal does not flow at right angles to the wire drawing direction. We see no reason for believing that the melted metal will not freely flow into the aperture or groove which projects outwardly from the perpendicular sides of his cylindrical block.

Wyland shows at the top of the hollow cavity in the block an extended vertex which is an opening above the diamond into which the metal will flow from at least three directions and not necessarily in a direction at right angles to the wire drawing direction.

We think the Board properly held that Wyland could not make the count and properly awarded priority of the invention of the count to the party Simons.

After the original transcript of record had been certified from the Patent Office, appellee suggested a diminution thereof, and this court issued a writ of certiorari requiring that certain additions to the record be certified by the Commissioner of Patents, and that the same be printed. Pursuant to said writ, said additions were made to the record. It is our view that the additional record so certified and printed was unnecessary to a proper determination of the issues in this case, and that the cost of printing the same should be taxed against the appellee; and it is so ordered.

The decision of the Board of Appeals is affirmed.

Affirmed.